IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

IN RE:

DENNIS WESTLEY ELIASON and
AMY MARIE ELIASON,

         Debtors.

Case No. 21-12161-cjf

Chapter 7

DENNIS WESTLEY ELIASON and
AMY MARIE ELIASON,

         Plaintiffs,

v.

BANK OF NORTH DAKOTA,

         Defendant.

Adversary Case No. 23-00002

## PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiffs Dennis Westley Eliason and Amy Marie Eliason, by their attorney, Daniel C. Rislove, submit this pretrial Findings of Fact and Conclusions of Law, pursuant to the Court's preliminary pretrial order.

1. Plaintiffs filed for relief under Chapter 7 of the Bankruptcy Code on October 20, 2021.

2. This Court has jurisdiction of this Adversary Proceeding under 28 U.S.C. §§ 157 & 1334.

3. This is a 28 U.S.C. § 157 core proceeding.

4. Venue is proper under 28 U.S.C. § 1409(a).

5.  This Court has authority to determine the dischargeability of the debt owed by Plaintiff Amy Eliason (hereinafter "Amy") to Defendant Bank of North Dakota (hereinafter "BND") under Section 523(a)(8) of Title 11 of the United States Code (hereinafter Title 11 is referred to as "the Bankruptcy Code").

6.  In the alternative, this Court has authority under Section 105(a) of the Bankruptcy Code to order a partial discharge of Amy's debt to BND and to order an equitable payment plan of the remaining debt. *Tenn. Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 438-39 (6th Cir. 1998); *Saxman v. Educ. Credit Mgmt. Corp. (In re Saxman)*, 325 F.3d 1168, 1173 (9th Cir. 2003); *Manion v. Modeen (In re Modeen),* 586 B.R. 298, 305-08 (Bankr. W.D. Wis. 2018).

7.  A finding of "undue hardship" under section 523(a)(8) of the Bankruptcy Code requires a three-part showing by the plaintiff/debtor: "(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans." *Brunner v. New York State Higher Educ. Services Corp.,* 831 F.2d 395, 396 (2nd Cir. 1987); *In re Roberson* , 999 F.2d 1132, 1135 (7th Cir. 1993).

8.  Amy attended the Eau Claire campus of Globe University in 2010 and 2011 with the intention of obtaining certification as a medical assistant.

9.  At the time of her admission to Globe University, Amy was told by the admissions officer that she would be able to complete her degree and obtain her certification as a medical assistant at the Eau Claire Campus.

10. At the time of her admission to Globe University, Amy was told by the admissions officer that her academic credits would transfer to other educational institutions.

11. In the fall of 2011, a director of the nursing program revealed to her that she would have to travel to Minnesota and pay an additional certification fee to obtain her certification as a medical assistant.

12. Amy later discovered that her credits from Globe University would not transfer to Chippewa Valley Technical College, the other major technical school in the Eau Claire area.

13. Because of the revelation of the new certification fee, the new requirement of travelling to Minnesota for certification, the birth of her son on or about the time of graduation, and the impossibility of transferring her credits to Chippewa Valley Technical College, Amy did not obtain her certification as a medical assistant.

14. Globe University closed permanently in 2017.

15. In order to finance her education at Globe University, Amy took out two loans of approximately $37,000 from BND.

16. The proceeds from Amy's loans from BND were used for tuition, books, course fees, and living expenses.

17. BND is an agency of the government of the state of North Dakota.

18. In addition to the student loans from BND, Amy took out additional student loans backed by the Department of Education.

19. Amy's student loans with the Department of Education were subject to a "hardship" discharge after a stipulation and order by this Court in 2022.

20. Since graduating from Globe University in 2011, Amy has held a string of unskilled jobs for minimal pay to the present day.

21. Amy was married to Plaintiff Dennis Westley Eliason (hereinafter "Dennis") in 2013. They are currently married.

22. Amy and Dennis have one son, who is twelve years old.

23. Dennis obtained an associate degree in organizational leadership from Chippewa Valley Technical College in 2008.

24. Dennis took out loans backed by the Department of Education to pay for his degree from Chippewa Valley Technical College.

25. In 2022, Dennis' student loans given an administrative discharge through the Department of Education's Total and Permanent Disability discharge ("TPD") program.

26. Dennis is currently in a three-year probationary period under the TPD program.

27. Dennis was initially employed in the field of business after graduation, but began to receive Social Security Disability in 2019 as the result of worsening physical ailments.

28. Dennis currently works part-time as a clerk for Kwik Trip.

29. In 2023, Dennis and Amy were forced to move to a more expensive apartment when the trailer park they had been living at closed due to contaminated water problems.

30. Dennis and Amy have no disposable income available after paying their necessary and reasonable living expenses.

31. Dennis and Amy are not currently making payments on their student loans.

32. Dennis and Amy are currently at or below a minimal standard of living.

33. Dennis' prospects for greater income in the future are severely limited due to his continuing disability.

34. Amy's prospects for greater income in the future are severely limited due to her lack of certification as a medical assistant.

35. Amy's lack of certification as a medical assistant was the direct result of factors beyond Amy's control.

36. Dennis' disability status and Amy's failure to obtain certification through no fault of her own have left them unable to find higher paying jobs in the foreseeable future. This constitutes "additional circumstances" indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans.

37. Under the terms of Amy's loan agreement, Amy was required to begin making payments soon after graduating from Globe University in 2011.

38. Amy remembers making some payments to BND, but BND has no record of ever receiving a payment on Amy's loan.

39. BND, which is not affiliated with the Department of Education, does not offer any of the loan forgiveness or payment modification programs made available to student loan debtors by the Department of Education, other than forbearance on a case-by-case basis.

40. Amy had no reasonable options for reducing her monthly payment to BND to match her income from unskilled jobs.

41. As a result, Amy's loan went into default.

42. As a result of default, Amy owes the entire balance, with interest and fees, of $54,362.20, payable immediately to BND.

43. Minimal or even complete lack of payments cannot be attributable to lack of "good faith" under the third prong of the *Brunner* test if such payments were impossible to make, and if the reason for the inability to make payments was due to factors beyond the debtor's control.

44. Amy's student loans to BND should be discharged in bankruptcy, as failure to discharge her student loans would result in "undue hardship" under Section 523(a)(8).

45. In the alternative, Amy's student loans should be subject to the equitable remedies of forbearance, income-based repayment plan, partial discharge, or some combination of all of the above in order to avoid the financially oppressive consequences of immediately owing the entire amount of the loan. *See Hornsby*, 144 F.3d 433, at 435, 440 (authorizing equitable debt relief options to debtors who defaulted before making any student loan payments).

Dated this 11th day of July, 2023.

            CHRISTIANSON & FREUND, LLC
            Counsel for Plaintiffs

            */s/ Daniel C. Rislove*
            DANIEL C. RISLOVE
            Christianson & Freund, LLC

        920 South Farwell Street
        Eau Claire, WI 54702-0222
        715-832-1800
        lawfirm@cf.legal

## Certificate of Service

I certify that on July 11, 2023, I caused this Plaintiff's Proposed Findings of Fact and Conclusions of Law to be served upon the parties by electronic notice through CM/ECF.

        */s/* Daniel C. Rislove
        DANIEL C. RISLOVE